THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. L.C. RILEY, JR., *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—88—0773, 1—88—0794 cons.

Opinion filed June 22, 1992.

1014

Rita A. Fry, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant L.C. Riley.

Richard S. Kling, of Chicago, for appellant Willie Dixon.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Maureen Harton, James E. Fitzgerald, and Noreen Daly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On July 6, 1985, L.C. Riley, Jr., Willie Dixon, and Michael Wilson decided to rob an ice cream truck. That evening, the three encountered a truck operated by Enos Conard and his son, Troy. As Wilson remained in a car nearby, Dixon, armed with a handgun, and Riley approached the truck's side service window and ordered a fudge bar from Troy.

The ensuing events unraveled quickly. By the time Troy returned with the fudge bar, Dixon was brandishing the handgun and motioning for Troy to be quiet. Troy panicked and screamed to

Enos, "Dad, he's got a gun." Enos, who kept a handgun in the truck for security, turned toward the side window with gun in hand. Dixon fired, striking Enos in the chest. Despite Troy's efforts to render aid, Enos died a short time later.

Eventually, Riley, Dixon, and Wilson were apprehended and charged. Riley and Dixon stood trial simultaneously before separately impanelled juries. Both were convicted of the murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) of Enos and attempted (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) of Enos and Troy. Dixon was sentenced to natural life in prison. Riley was sentenced to 40 years for murder and 15 years for each of the attempted armed robbery convictions with the sentences to run concurrently. Wilson, who was charged with murder and attempted armed robbery, testified for the State. The State agreed to dismiss the murder charge and requested that Wilson serve only four years in exchange for his testimony against Riley and Dixon and be released from custody immediately after testifying.

We affirm the convictions and sentences of Riley and Dixon.

Riley raises nine separate issues on appeal. He first contends that the trial judge improperly failed to suppress an inculpatory statement Riley gave to police following his arrest. Riley contends the statement was the result of coercion.

Admission of Riley's statement was supported by the testimony of Chicago police detectives Robert Dwyer and Raymond Madigan. The detectives, who had learned of Riley's participation in the crimes through a police informant, discovered, on August 28, 1985, that Riley was being held at a police station following his arrest for a traffic violation. The detectives' testimony related to their interviews with Riley conducted that day.

Dwyer stated Riley initially was interviewed by Madigan regarding the murder at approximately 4 p.m., after Riley had been informed of, and waived, his constitutional rights. Madigan conducted a second interview with defendant approximately 30 minutes later. At approximately 6:30 p.m., the detectives left the defendant handcuffed to a wall in the interview room to continue their investigation.

At approximately 11:45 p.m., Dwyer spoke to Riley after advising Riley again of his constitutional rights. Riley then admitted his participation in the murder and acknowledged the actions of Wilson and Dixon. Riley repeated his statement to an assistant State's Attorney approximately two hours later after again having been ad-

vised of his rights. Riley's statement was reduced to writing by a court reporter at approximately 4:05 a.m.

Madigan's testimony mirrored Dwyer's testimony in all material aspects. Madigan stated, regarding the initial interview that, because Riley was under arrest regarding the traffic violation, he was not free to leave. Riley initially claimed to have no knowledge of the crimes. However, Madigan acknowledged that Riley inquired whether he could strike a "deal" if he did give the police information.

Riley testified Dwyer and Madigan asked him to answer some questions after approaching him while he was securing his release from custody pursuant to the traffic arrest. It was Riley's testimony that in ensuing interviews, he was handcuffed to a wall and, at one point, was left in the dark while the detectives continued their investigation. The detectives ignored Riley's repeated requests to contact an attorney. Riley stated that when he was not forthcoming with answers to Madigan's questions, Madigan slapped him, twisted his arm, and punched him in the stomach. Riley stated that Dwyer had also punched him and had struck him with a rolled-up newspaper. Only after Dwyer had indicated that police believed codefendant Dixon was the shooter did Riley agree to give his statement. Until the assistant State's Attorney arrived to take Riley's statement, Riley had not been informed of his constitutional rights. Riley also complained about stomach pain but was then denied requested medical attention. We note that the record indicates that on September 17, 1985, Riley received treatment for "blunt trauma" at a hospital after he coughed up blood while brushing his teeth.

The record also shows that the defense stipulated that throughout the course of the proceedings at the police station, Riley knew and understood his rights. Riley himself admitted asking Madigan whether he would be released without being charged if he told the truth. Madigan told Riley he could make no such promise. Riley conceded that he never told the assistant State's Attorney that he was mistreated by the detectives. Riley also acknowledged that he initialled each page of the written statement, indicating he was aware of the contents of the statement and had answered that all of the statements contained in the statement were true.

■ Essentially, it is Riley's argument on appeal that the trial judge should have believed his testimony over that of Dwyer and Madigan, contrary to the trial judge's expression of opinion in ruling on the motion. On a motion to suppress, however, it is the trial judge's duty to resolve conflicts in evidence and determine the cred-

ibility of the witnesses. (*People v. Jones* (1989), 184 Ill. App. 3d 412, 541 N.E.2d 132.) When, as here, the defendant's testimony is the only evidence of coercion and the State's witnesses deny the conduct alleged, the trial judge enjoys the best position to determine credibility. (*People v. Jones*, 184 Ill. App. 3d 412, 541 N.E.2d 132.) We do not find the evidence of Riley's receipt of medical attention, more than two weeks after the date of the alleged beatings, to be independent evidence of coercion as the source of the trauma also depends on Riley's credibility. In the absence of independent circumstances indicating coercion, we cannot conclude that the trial judge abused his discretion in denying Riley's motion.

Riley next argues that he received ineffective assistance of trial counsel. First, Riley claims, noting various inconsistencies in the testimony of codefendant Wilson, that his trial counsel was ineffective for failing to request the following jury instruction:

> "The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you for the purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom." Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981) (hereinafter IPI Criminal 2d).

Riley's argument is without merit. The trial judge instructed the jury as follows:

> "You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe his age, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case[.]
>
> When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal 2d, Nos. 1.02, 3.17.)

The jury was thereby sufficiently and properly advised as to the weight to accord Wilson's testimony, and we find no basis to disturb Riley's conviction. (*People v. Georgev* (1967), 38 Ill. 2d 165, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88

S. Ct. 1202.) In fact, the language of the instructions is more limiting, in Riley's favor, than the instruction Riley now claims should have been given.

Riley also claims counsel was ineffective because counsel conceded, in his closing remarks to the jury, that Riley was responsible for some aspects of the crime. The comments are contained in the following commentary:

"[The State talks] about a team, a member of the team. If Michael Wilson would have stayed home that day and rested from the heroin that he admitted he injected the night before, none of this would have happened. If [the individual who supplied the gun] had left his gun at home, who knows? Who knows? I'm not saying to you and this is an unusual case in the sense that I am not saying to you that this man is not in some way responsible for what happened. There is no question about it, you are reasonably intelligent people. I'd be a damn fool if I tried to tell you [he was] not responsible for some of this. There is no question about that. But for God's sake let's get our priorities straight here."

Riley, relying primarily on *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1013, 92 L. Ed. 2d 727, 106 S. Ct. 3314, asserts the comments show his counsel did not understand the law of accountability, the basis for his conviction.

*Hattery* involved the reversal of a conviction in a capital case based on opening remarks by defense counsel that he was not asking the jury to find the defendant not guilty. Defense counsel proceeded to present no evidence of defendant's innocence at trial. The supreme court clarified its decision in *Hattery* in *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118. The court noted that one of the goals in *Hattery* was to make certain that the defense presented by counsel at trial was consistent with defendant's preferred theory of defense. Relevant here, the court further noted that ineffectiveness does not automatically arise whenever defense counsel concedes defendant's guilt to an offense where there is overwhelming evidence of that guilt. That fact, the court stated, would be especially true when counsel presents a strong defense to other charges.

■ The decision in *Hattery* does not provide reason to reverse Riley's convictions. Counsel's comments do not constitute the same type of concession of guilt as was before the court in *Hattery*. Counsel's comments here appear designed more to discredit a ver-

sion of events testified to at trial by Wilson rather than to concede Riley's guilt. More importantly, it is difficult to find Riley's ineffectiveness claim, based on alleged prejudice resulting from counsel's comments, valid when Riley's own statement admitted his involvement in the crime.

■ Riley also complains he was prejudiced by the continued display before the jury of Enos' bloodstained shirt which had been admitted into evidence. However, because Riley failed to raise the issue in his written post-trial motion, Riley has waived the opportunity to raise the issue here. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) We find no reason to excuse that waiver under the limited plain error exception. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 238.

For similar reasons, we decline to address Riley's claim that the State engaged in improper commentary during closing argument. Riley failed to object at trial to any of the complained-of remarks and failed to include the issue in his written post-trial motion. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Carlson*, 79 Ill. 2d 564, 404 N.E.2d 233.

Riley next asserts he is entitled to a new sentencing hearing because the trial judge, in commenting on the propriety of the sentence imposed, compared Riley and others guilty of similar conduct as "a type of cancer." Riley construes that comment as a reference to his condition of being "poor, black, uneducated and accused *** of a crime."

■ Riley mischaracterizes the nature of the comment. The record indicates the comment did not arise from any racial or economic bias but, instead, reflected the trial judge's cognizance of what the evidence showed to be Riley's disdain of the law. See *People v. Brown* (1990), 195 Ill. App. 3d 78, 551 N.E.2d 1100, *appeal denied* (1990), 132 Ill. 2d 548, 555 N.E.2d 379, *cert. denied* (1990), 498 U.S. 903, 112 L. Ed. 2d 223, 111 S. Ct. 267.

■ Riley contends his 40-year prison sentence was excessive given that he did not shoot Enos, did not have an extensive criminal record, and did not act violently toward police while in custody.

It is well settled that sentencing is within the discretion of the circuit court, and its decision will not be changed upon review absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) Each of the points Riley raises here was before the trial judge for consideration. Moreover, the sentence is

within the statutory range provided in the Unified Code of Corrections. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1).) Accordingly, we find no reason to disturb Riley's sentence.

On appeal, Willie Dixon raises two contentions, both related to the State's elicitation of an in-court identification of Dixon by Troy Conard. Dixon argues that the trial judge should have prevented the State from eliciting the identification, and he then uses that contention to argue that his trial counsel was ineffective for giving the State reason to do so.

■■ Prior to trial, the trial judge granted Dixon's motion to suppress Troy's identification of him from a police lineup because Dixon had not been permitted to speak with his attorney as he had requested. Accordingly, the trial judge also refused to permit the State to present any in-court identification of Dixon by Troy. The trial judge, however, did permit Troy to testify regarding his earlier identification of Dixon in a photograph.

With regard to that identification, Troy testified that on August 28, 1985, he was shown several photographs, one of which he tentatively identified as picturing the gunman. The next day, he affirmatively identified the gunman from other photographs. At trial, the State properly limited its questioning of Troy in that regard and inquired only as to whether he had, in fact, made such an identification.

However, during cross-examination, Dixon's counsel, referring to one of the photographs, pointedly asked whether Troy saw "the man who is pictured *** in court here." The State objected. Before the trial judge ruled on the objection, Dixon's counsel then asked, "Well, do you know who that is [in the photograph]?"

The trial judge thereafter granted the State's request to elicit, on redirect examination of Troy, an in-court identification of Dixon, contrary to his earlier ruling. The trial judge explained, in some detail, his reasons for the change. He acknowledged that Troy had been instructed not to make any in-court identification of Dixon. However, when asked by defense counsel whether he could identify the man pictured in court, Troy, apparently confused, had paused. Thus, the trial judge sought to correct any false impression that Troy did not, or could not, identify Dixon.

Dixon has no basis upon which to argue that the identification elicited by the State on redirect testimony was improper. A defendant may not complain about the impropriety of the admission of evidence, where defendant has invited that admission, even though it be improper. (*People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44,

*cert. denied* (1984), 465 U.S. 1036, 79 L. Ed. 2d 708, 104 S. Ct. 1310.) Dixon's counsel's questions regarding whether Troy could identify, in court, the individual pictured clearly provided a basis to permit the State to elicit Troy's identification for the reasons cited by the trial judge.

Dixon's claim of ineffective representation also must fail. Generally, in order to establish ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for that error, the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) A defendant bears a heavy burden to overcome the strong presumption in favor of a finding that defense counsel's advocacy was not ineffective. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Further, the determination of the reasonableness of trial counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of the circumstances. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

■ As the trial judge recognized, rather than being ineffective, the record here indicates that Dixon's counsel's questioning of Troy was a clever trial tactic. The State had represented that Troy had been warned not to violate the court's ruling that Dixon was not to be identified in court. By asking the question that Dixon's counsel knew Troy had been instructed not to answer, counsel successfully created the impression that Troy could not answer the question because he was uncertain as to Dixon's identity. There is no indication that the action was an unprofessional error such as could support a claim of ineffectiveness. *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246.

The convictions and sentences of Riley and Dixon are affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.