2021 IL App (1st) 161641
No. 1-16-1641
March 29,2021

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 85 C 11509 |
| v. | ) | |
| | ) | |
| WILLIE DIXON, | ) | The Honorable |
| | ) | Thomas V. Gainer Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justice Hyman and Justice Coghlan concurred in the judgment.

**OPINION**

¶ 1        Once again, this court confronts issues arising from the extensive criminal activities of police officers who collaborated with Commander Jon Burge at Area 1 and Area 2 police headquarters in Chicago. A jury found Willie Dixon guilty of a murder that occurred in 1985. This court affirmed the conviction and later affirmed the denial of his postconviction petition. In 2016, Dixon filed a motion for leave to file a successive postconviction petition. He alleged that two of Burge's associates, Detectives Daniel McWeeny and Raymond Madigan, improperly influenced a witness to falsely identify Dixon as the murderer. Dixon supported his

motion with reports of McWeeny's and Madigan's participation in the officers' criminal activities at Area 2 headquarters. The trial court denied the motion for leave to file the successive postconviction petition. We hold that the motion adequately alleges facts that support findings of cause for Dixon's failure to raise the issue earlier and prejudice from the lack of evidence at trial. We reverse and remand for further proceedings on the successive postconviction petition.

¶ 2                                    I. BACKGROUND

¶ 3        In 1985 Enos Conard and his son, Troy Conard, sold ice cream bars out of a truck. On July 6, 1985, two men asked Troy for ice cream. As Troy started to give one of the men an ice cream bar, he saw a gun in the man's hand. Troy said, "Dad, he's got a gun." Enos, his own gun in hand, turned to look, and the man outside the truck fired one shot. The bullet killed Enos. Troy told police the shooter was a black man about 25 or 26 years old, who stood about 5 feet, 8 inches, weighed around 165 pounds, and had short hair and sideburns. Late in August 1985, police arrested L.C. Riley as an accomplice to the murder. Police arrested Dixon in September 1985 and charged him with shooting Enos. Dixon, 33 years old, stood 6 feet, 1 inch, weighed 185 pounds, and wore no sideburns.

¶ 4        Dixon filed a motion to suppress evidence that Troy identified Dixon as the shooter from a photo array and in person lineup. In the photo array, admitted into evidence, only one photograph, Dixon's, bore any writing. Dixon's name appeared on the back of the photograph. McWeeny testified that he wrote the name on the photograph after Troy identified it as a picture of the shooter. Madigan corroborated McWeeny's testimony. McWeeny and Troy testified that

the participants in the lineup were silent. One of the fillers in the lineup testified that each participant stepped forward and stated his name while Troy watched.

¶ 5        The trial court found McWeeny, Madigan, and Troy credible. The court denied the motion to suppress the photo array identification but granted the motion to suppress the lineup identification based on the finding that police violated Dixon's right to counsel during the lineup. The court also barred Troy from identifying Dixon in court as the shooter. No physical evidence tied Dixon to the crime. The evidence at the jury trial came primarily from two witnesses: Troy and Michael Wilson. In exchange for Wilson's testimony against Riley and Dixon, and for Wilson's guilty plea to a charge of attempted armed robbery, the State agreed to drop murder charges against Wilson and recommend a sentence of four years in prison.

¶ 6        Wilson testified that on July 6, 1985, he went to a liquor store, where he saw Riley and Dixon. Wilson left to sit in his car, and Riley and Dixon approached Wilson. Riley said, "let's stick up a[n] ice cream truck." Wilson agreed to drive, and he agreed to let Riley use Wilson's gun. The three men cruised the area looking for ice cream trucks. When they found one, Wilson drove past and parked some distance away. Riley and Dixon walked through a park towards the truck. Wilson saw Riley hand Dixon the gun. A few minutes later, Riley and Dixon returned to Wilson's car. According to Wilson, Riley said, "Willie shot the man." Troy testified that, six days after the murder, he returned to the police station to look through mug shots. He picked one as looking like the shooter and asked to see a more recent photo. The more recent photo did not look to Troy like the shooter. Six weeks later, in August 1985, McWeeny showed Troy an array of five photographs. From the array, Troy chose the photograph of Dixon as resembling the shooter. Again, he asked to see a more recent photograph. McWeeny then

3

showed Troy an array of six photographs. Troy picked a photograph of Dixon as a depiction of the shooter.

¶ 7       The trial court ruled that on cross-examination defense counsel improperly suggested Troy could not recognize Dixon in court as the shooter. The court permitted Troy to identify Dixon in court as the man who shot Enos. Dixon's mother testified that Dixon never wore sideburns. Defense counsel argued that Troy's initial description of the shooter did not match Dixon. The jury found Dixon guilty of first degree murder. The trial court sentenced him to life in prison. This court affirmed the conviction and sentence. *People v. Riley*, 230 Ill. App. 3d 1013 (1992). Dixon filed numerous petitions for relief, including a petition for a writ of *habeas corpus*, a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), a postconviction petition, and several motions for leave to file successive postconviction petitions. The trial court denied all the petitions for relief, and this court affirmed the rulings. *People v. Dixon*, No. 1-95-3756 (1997) (unpublished order under Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-00-0285 (2001) (unpublished order under Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-00-3444 (2001) (unpublished order under Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-01-4482 (2003) (unpublished order under Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-03-3387 (2003) (dispositional order); *People v. Dixon*, No. 1-04-3111 (2005) (dispositional order); *People v. Dixon*, No. 1-06-0498 (2007) (unpublished order under Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-07-1898 (2007) (dispositional order); *People v. Dixon*, No. 1-08-0183 (2008) (dispositional order); *People v. Dixon*, No. 1-08-1518 (2009) (unpublished order under

Illinois Supreme Court Rule 23); *People v. Dixon*, No. 1-13-1469 (2014) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 8     In January 2016, Dixon filed another motion for leave to file a successive postconviction petition and asserted that new evidence substantiated his claim that police improperly influenced Troy to identify Dixon as the shooter. He attached to his petition a report published in the Chicago Sun-Times on October 21, 2008, entitled "Human Rights at Home: The Chicago Police Torture Archive." See People's Law Office, *118 Documented Burge Area 2 and 3 Torture Victims 1972-1991*, https://peopleslawoffice.com/wp-content/uploads/2014/01/ 1.6.14.-Documented-TortureSurvivorsunderBurge.pdf (last visited Mar. 18, 2021) [https://perma.cc/6H5D-FMV9]. The report lists dates, perpetrators, and victims of documented abuse by police officers who worked with Burge from 1972 to 1991. According to the report, McWeeny participated in the physical and psychological abuse of Melvin Jones, James Andrews, David Faultneroy, Lee Nora, Darrell Cannon, Leroy Orange, Leonard Kidd, Alex Moore, Stanley Howard, Aaron Patterson, Madison Hobley, Keith Walker, and TyShaun Ross. Madigan participated in the physical and psychological abuse of Adams, Faultneroy, Nora, Orange, Kidd, Patterson, Lonza Holmes, Eric Caine, and Clarence Trotter. In several cases concerning the listed victims, McWeeny and Madigan refused to answer questions about the evidence of abuse on grounds that the answers would tend to incriminate them. Dixon also attached an article from the Chicago Tribune about crimes committed by police working with Burge. Steve Mills & Maurice Possley, *3 Burge Cops Get Immunity in Torture Case*, Chi. Tribune, Dec. 2, 2005, https://www.chicagotribune.com/news/ct-xpm-2005-12-02- 0512020133-story.html (last visited Mar. 18, 2021) [https://perma.cc/L2NG-PKK3].

¶ 9        Dixon said in his motion for leave to file a successive postconviction petition:

> "The allegations of Det's McWeeny and Madigan pattern and practice of
> misconduct as presented in the instant petition are newly discovered, since,
> such evidence was not reasonabl[y] available to defendant at the time of his
> first post-conviction petition. *** [T]his evidence would negatively impact
> Det's McWeeny and Madigan credibility at the suppression hearing."

The trial court denied Dixon's motion for leave to file a successive postconviction petition.
Dixon now appeals. The State has filed no response to Dixon's appeal. We address the merits
of the appeal on the basis of Dixon's brief alone. See *People v. Salgado*, 353 Ill. App. 3d 101
(2004).

¶ 10                                    II. ANALYSIS

¶ 11       We review *de novo* the decision to deny a motion for leave to file a successive
postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13. Although the Post-Conviction
Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) contemplates only one
postconviction petition for each conviction, courts may allow successive postconviction
petitions when the petitioner can show either actual innocence or cause and prejudice for the
failure to raise the claim earlier. *People v. Edwards*, 2012 IL 111711, ¶ 22. For the cause and
prejudice test, the defendant must allege facts supporting findings of cause for failure to raise
the claim earlier and prejudice in that the matter not raised "so infected the entire trial that the
resulting conviction or sentence violates due process." *People v. Pitsonbarger*, 205 Ill. 2d 444,
464 (2002). The court should deny leave to file a successive postconviction petition "when it
is clear, from a review of the successive petition and the documentation submitted by the

petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. Dixon has shown cause for failing to raise the claim earlier, as the extent of the criminal activities of the officers working with Burge mostly came to light after Dixon's 1987 trial and after the dismissal of his postconviction petition in 1995. See *People v. Almodovar*, 2013 IL App (1st) 101476, ¶¶ 63-64.

¶ 12        Dixon also suffered prejudice from the suppression of evidence, known to police at the time of Dixon's trial, concerning McWeeny's and Madigan's history of misconduct. This court's opinion on the direct appeal reflects the extent to which this court accepted testimony adduced by the prosecution as unquestionably true. The court started its opinion:

>        "On July 6, 1985, L.C. Riley, Jr., Willie Dixon, and Michael Wilson decided to rob an ice cream truck. That evening, the three encountered a truck operated by Enos Conard and his son, Troy. As Wilson remained in a car nearby, Dixon, armed with a handgun, and Riley approached the truck's side service window and ordered a fudge bar from Troy." *Riley*, 230 Ill. App. 3d at 1015.

¶ 13        The trial court and the jury did not hear evidence that McWeeny and Madigan used beatings, threats, perjury, and other criminal acts to obtain wrongful convictions in several cases. This evidence would have been relevant in excluding the testimony of these witnesses at the motion to suppress identification testimony.

¶ 14        Troy has not testified that McWeeny and Madigan physically or psychologically abused him to induce him to identify Dixon as the shooter, but the proffered new evidence "was relevant and material because it established a pattern of abuse on the part of Detective[s

7

McWeeny and Madigan] that would impeach [their] credibility." *Almodovar*, 2013 IL App (1st) 101476, ¶ 67. The acts alleged in the petition show a pattern and practice of fabricating evidence to obtain criminal convictions.

¶ 15    The allegations in the postconviction petition and its supplement, along with evidence adduced in a number of other cases involving officers working under the direction of Burge at Area 2 police headquarters, also support the conclusion that Burge and some of the officers he directed used a variety of methods, including torture, beatings, threats, and perjury, to obtain criminal convictions against their victims. See *Hobley v. Burge*, 223 F.R.D. 499 (N.D. Ill. 2004); *United States v. Burge*, No. 08 CR 846, 2009 WL 3597950 (N.D. Ill. Oct. 27, 2009); *United States ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999); Elliott Riebman, How and Why a Code of Silence Between State's Attorneys and Police Officers Resulted in Unprosecuted Torture, 9 DePaul J. for Soc. Just. 1, 20 (2016), https://via.library.depaul.edu/jsj/vol9/iss2/3/.

¶ 16    The allegations in the petition, along with evidence in other cases, indicate that McWeeny and Madigan participated in criminal activities. See *People v. Nicholas*, 2013 IL App (1st) 103202, ¶ 40; *People v. Whirl*, 2015 IL App (1st) 111483, ¶ 68. The proffered evidence impeaching McWeeny and Madigan justifies further proceedings to determine whether McWeeny and Madigan improperly influenced Troy to identify Dixon as the shooter by singling out Dixon's picture in the photo array, labeling the picture with Dixon's name, and having Dixon state his name in the lineup Troy viewed at the police station. "[I]t is proper to cross-examine a witness about engagement in an unlawful and disreputable occupation as a matter affecting general credibility." *People v. Newman*, 123 Ill. App. 3d 43, 46 (1984); see

*People v. Neumann*, 148 Ill. App. 3d 362, 372 (1986) (evidence of witness's involvement in organized crime admissible for impeachment). Because Dixon has shown both cause for and prejudice from the lack of evidence at trial impeaching McWeeny and Madigan, the trial court should have granted him leave to file his successive postconviction petition. *Almodovar*, 2013 IL App (1st) 101476, ¶ 75.

¶ 17                                  III. CONCLUSION

¶ 18        Because Dixon sufficiently alleged facts supporting findings of both cause and prejudice, we reverse the trial court's judgment and remand for further proceedings on Dixon's successive postconviction petition. Reversed and remanded.

---

**No. 1-16-1641**

---

| | |
|---|---|
| **Cite as:** | *People v. Dixon*, 2021 IL App (1st) 161641 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 85-C-11509; the Hon. Thomas V. Gainer Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ann C. McCallister, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellee. |

---