(No. 56204.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DARNELL PAYNE *et al.*, Appellants.

*Opinion filed October 21, 1983.*

46

James J. Doherty, Public Defender, of Chicago (Karen A. Popek, Assistant Public Defender, of counsel), for the appellants.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Michael E. Shabat, Joan S. Cherry, and Marie Quinlivan, Assistant State's Attorneys, of Chicago, of counsel), for the People.

James D. Montgomery, Jerome A. Siegan, and Maureen Kelly Ivory, Corporation Counsel, for *amicus curaie* City of Chicago.

JUSTICE UNDERWOOD delivered the opinion of the court:

Following a joint jury trial in the circuit court of Cook County, defendants, Darnell Payne and Larry Bailey, were convicted of armed violence, armed robbery and burglary. Payne was sentenced to concurrent terms of 24 years' imprisonment for the armed-violence and armed-robbery offenses, Bailey was sentenced to concurrent terms of 18 years' imprisonment for those offenses, and both defendants were sentenced to concurrent terms of seven years' imprisonment on their burglary convictions. The appellate court affirmed except as to Bailey's armed-violence conviction, holding as to it that he had

never been charged with that offense. (102 Ill. App. 3d 950.) We allowed defendants' petition for leave to appeal.

The facts surrounding the crimes need only briefly be related here. Earlene Norman testified that defendants, armed with a sawed-off shotgun and a handgun, broke into the Normans' apartment at approximately 9 a.m. on November 8, 1978, stealing some $2,000 in cash which Mrs. Norman's husband, who was working at the time of the crimes, had apparently recently received in an insurance settlement. Defendants remained inside the apartment for approximately 20 minutes while holding a gun to Mrs. Norman's head, threatening her life, and otherwise physically restraining and abusing her. They were seen fleeing the apartment by Claud Pearce, the janitor of the building, and by Sherry Friend, the adult daughter of one of the residents of the building.

The police interviewed the victim and other residents and potential witnesses and, later that afternoon, received information regarding the identity and addresses of the offenders from an individual previously unknown to the police. Defendants were thereafter arrested in Bailey's apartment. After placing defendants under arrest, the officers searched the apartment and recovered, from the vegetable compartment of the refrigerator, a .32-caliber nickel-plated revolver and a loaded .25-caliber blue-steel automatic. Defendants were placed in a six-man lineup later that evening and identified by both Earlene Norman and Claud Pearce. Sherry Friend did not view the lineup.

Prior to trial, defendants moved to quash their arrests and suppress all evidence obtained as a result thereof on the ground that the police acted without probable cause and without a warrant. Following a hearing, the trial court found that there was "ample evidence of probable cause to arrest" but suppressed the weapons, holding that the search of the refrigerator was illegal be-

cause it exceeded the area within defendant's immediate control.

Defendants were identified at trial by Mrs. Norman, Mr. Pearce and Sherry Friend. The blue-steel revolver was also admitted in evidence after a ruling by the court that defense counsel's cross-examination of one of the police officers had "opened the door" to the suppressed weapon. Mrs. Norman was recalled and identified the weapon by its size and color as similar to the one held by defendant Bailey. Bailey testified in his own behalf. He denied all involvement in the crimes, stating that he was asleep at his girlfriend's apartment during the relevant time period. The jury returned guilty verdicts on all charges.

While defendants first argue that the trial court committed reversible error in admitting the previously suppressed handgun and related testimony, we agree with the trial and appellate courts that defendants invited or "opened the door" to this evidence. Consequently, we need not consider the propriety of the search which revealed the gun. Defense counsel's entire cross-examination of one of the arresting officers, which the trial court held "opened the door" to this evidence, consisted of the following:

"[DEFENSE COUNSEL]: Officer Munkvold, at the time of the arrest of Mr. Bailey and Mr. Payne, they were searched, were they not?

[ASSISTANT STATE'S ATTORNEY]: Objection.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Basis?

[ASSISTANT STATE'S ATTORNEY]: In fact, I'll withdraw the objection.

THE WITNESS: Yes, they were.

[DEFENSE COUNSEL]: Was the apartment searched?

[THE WITNESS]: Yes, it was.

[DEFENSE COUNSEL]: Thank you. That's all."

Although defendants argue that the general questions on

cross-examination did not create the false implication that nothing connected with the robbery was recovered during the search, we see no reason to disturb the trial judge's contrary finding that the purpose and effect of the cross-examination was to create the clear and unmistakable impression that nothing was recovered. The trial judge was in a better position than we to judge the purpose and effect of the cross-examination, and considering that defense counsel acknowledged that his purpose was to establish a foundation for later arguing that neither the shotgun nor the money was recovered during the search (a point which he did later establish on re-direct examination), we cannot say that the trial judge's assessment was unreasonable. Nor do we think that the trial judge erred in allowing the State to rebut the false implication.

As the appellate court correctly noted, "[i]f a defendant procures, invites or acquiesces in the admission of evidence, even though it be improper, he cannot complain." *People v. Burage* (1961), 23 Ill. 2d 280, 283, *cert. denied* (1962), 369 U.S. 808, 7 L. Ed. 2d 555, 82 S. Ct. 651; see also *People v. George* (1971), 49 Ill. 2d 372, 379; *People v. Halteman* (1956), 10 Ill. 2d 74, 82-83; *cf. People v. Dixon* (1982), 91 Ill. 2d 346, 350.

Defendants' reliance on the Supreme Court's decisions in *United States v. Havens* (1980), 446 U.S. 620, 64 L. Ed. 2d 559, 100 S. Ct. 1912, *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, and *Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354, is misplaced. Those decisions involved the use of originally suppressed evidence for later impeachment purposes after a defendant testifies falsely or makes inconsistent statements. The problem in this case arose not from false statements, made by defendants while testifying, but rather from cross-examination and potential argument by the defense which falsely implied the absence of physical evidence connecting defendants with the crimes. While we

agree that defendants could argue the lack of corroboration of the identifications or point out that the State's case depended almost entirely upon the reliability of the identification testimony, we do not believe that they could affirmatively misrepresent or falsely imply that the police found no physical evidence connected with the robbery during their search. See 3 LaFave, Search and Seizure sec. 11.6(b) (1978) (defense tactics which "open the door" to the admission of illegally seized evidence); *People v. George* (1971), 49 Ill. 2d 372 (even assuming the illegality of the seizure from defendant's bedroom of a pillowcase and medals connected with a burglary, the prosecution's references thereto were not error since defendant first brought out such testimony in cross-examination of a prosecution's witness); *Commonwealth v. Wright* (1975), 234 Pa. Super. 83, 339 A.2d 103 (divulging suppressed evidence to the trial court consisting of nine packets of heroin in an effort to clear up the confusion created by defense counsel's cross-examination of the chemist was not error); see also *United States ex rel. Castillo v. Fay* (2d Cir. 1965), 350 F.2d 400, *cert. denied* (1966), 382 U.S. 1019, 15 L. Ed. 2d 533, 86 S. Ct. 637 (prosecutor's examination of police officer which revealed that instruments used in cutting narcotics were found in defendant's apartment during an illegal search did not warrant Federal *habeas corpus* relief where defense counsel had previously established that no narcotics were found, despite the fact that the State arguably "opened the door" to the illegal search by implying that incriminating evidence was found).

"There is no gainsaying that arriving at the truth is a fundamental goal of our legal system" (*United States v. Havens* (1980), 446 U.S. 620, 626, 64 L. Ed. 2d 559, 565, 100 S. Ct. 1912, 1916), and we consider that allowing the defense or prosecution to misrepresent to the jury the actual facts of the case is neither consistent with the proper functioning and continued integrity of the judicial system

nor with the policies of the exclusionary rules. (See *Havens; Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354.) That the jury was not instructed to consider this evidence for only a "limited" purpose is the result of defendants' failure to offer or even suggest an appropriate limiting instruction. See Ill. Rev. Stat. 1979, ch. 110, par. 67(3).

Defendants suggest in a footnote that the lineup identifications were tainted as a result of the appellate court's holding that the arrests were invalid, and that a new trial is therefore required. Even assuming that the arrests were invalid as the appellate court held, we agree with that court that the independent basis for the in-court identification obviates any need for a new trial. *United States v. Crews* (1980), 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244.

Defendant Payne next argues that his armed-violence conviction must be reversed because the third count of the information charging him with this offense did not set forth the elements of burglary—the predicate felony. While count II charged both defendants with committing the offense of burglary "in that they, without authority knowingly entered into a building, to-wit: the apartment of Earlene Norman with the intent to commit the offense of armed robbery, therein," Payne argues here that he was not sufficiently apprised of the charge against him and was thereby precluded from preparing an adequate defense. The sufficiency of the information was neither challenged by a pretrial motion nor by a motion in arrest of judgment, and the State therefore suggests defendant must show actual prejudice as required by *People v. Pujoue* (1975), 61 Ill. 2d 335. Both the State and defendant also rely on our recent decision in *People v. Hall* (1982), 96 Ill. 2d 315.

In *Hall* defendant was charged in one count of an information with armed violence predicated upon a violation of section 5(e) of the Cannabis Control Act (Ill. Rev. Stat.

1977, ch. 56½, par. 705(e)). That section could be violated by any of four acts—the manufacture, delivery, possession with intent to deliver, or possession with intent to manufacture, cannabis. Although the preceding count of the information charged defendant Hall with possession with intent to deliver, he argued in the trial court and on appeal that the failure to state the elements of the predicate felony in the second count did not give him adequate notice of the specific crime with which he was charged. Given the facts in that case, we did not agree. We held:

> "[W]hen one count of a multiple-count indictment states the purported predicate offense for another count with specificity, the latter count should not be held void unless the information itself or the prosecutor indicates affirmatively that some other offense is the predicate or there remains a realistic possibility of prejudicial uncertainty as to the predicate offense in light of facts agreed upon or placed in dispute." (*People v. Hall* (1982), 96 Ill. 2d 315, 321.)

Payne submits that burglary encompasses the alternative acts of unlawfully entering or unlawfully remaining within a building with the intent to commit any of a number of offenses ranging from the intent to commit a misdemeanor theft to the intent to commit any felony. He further argues that given the facts presented by the State, including evidence that Mrs. Norman was struck in the face with the gun, and physically restrained and threatened, the burglary upon which the armed-violence count was predicated could have been based upon the criminal intent to commit aggravated battery, unlawful restraint or intimidation. The difficulty with Payne's conclusion that there thus existed a realistic possibility of prejudicial uncertainty as to the predicate offense is that it ignores the "facts placed in dispute" in this case, which must, under the test set forth in *Hall,* be considered in assessing the possibility of prejudice.

The record is clear that the only issue in this case was whether defendants were the offenders. While the State's

burden necessarily required it to produce the evidence of the armed robbery and burglary, which included evidence of the circumstances surrounding those crimes, defense counsel made clear that the only issue was one of identification. Given the facts placed in dispute, the failure to repeat the elements of the burglary, which the State never intimated was based upon anything other than the elements set forth in the preceding count, falls far short of establishing either that actual prejudice or a realistic possibility of prejudicial uncertainty existed.

While we affirm Payne's armed-violence conviction, we agree that, under the authority of our decisions in *People v. Donaldson* (1982), 91 Ill. 2d 164, *People v. Mormon* (1982), 92 Ill. 2d 268, and *People v. Simmons* (1982), 93 Ill. 2d 94, his conviction for burglary must be vacated. We once again decline the State's request that we reconsider our holding in *Donaldson* that our armed-violence statute does not show a clear legislative intent to provide for the imposition of multiple convictions and sentences for both armed violence and the underlying felony where a single physical act is the basis for both charges. We do not believe, as the State suggests, that the Supreme Court's recent decision in *Missouri v. Hunter* (1983), 459 U.S. 359, 74 L. Ed. 2d 535, 103 S. Ct. 673, is instructive in ascertaining whether our statute manifests a clear legislative expression to provide for the imposition of multiple convictions and sentences. In contrast to our holding in *Donaldson* and its progeny, the Missouri Supreme Court had specifically recognized that its legislature clearly intended to provide for the imposition of multiple convictions and cumulative punishments for both armed criminal action and the underlying felony. Despite that acknowledged intent, the Missouri Supreme Court had held that the double jeopardy clause prohibits the imposition of such sentences. The Supreme Court rejected that interpretation of the double jeopardy clause, holding that, where the court has de-

termined that "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under [*Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180], a court's task of statutory construction is at an end" and the imposition of such sentences in a single trial does not violate the Constitution. (*Missouri v. Hunter* (1983), 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 544, 103 S. Ct. 673, 679.) Considering that we have found no such "clear legislative expression" in our statute, *Missouri v. Hunter* does not warrant a reconsideration of our prior decisions. Payne's conviction and sentence for burglary will accordingly be vacated. We do not believe, however, that, as a result, he is also entitled to a new sentencing hearing for his other convictions.

In *Donaldson*, we noted that the appellate court had misapprehended that the defendant had received a single nine-year term and remanded the cause for resentencing. In fact, defendant had received five concurrent nine-year terms, and we accordingly held that remandment was unnecessary. Payne also received separate concurrent sentences for each offense. There is simply no merit in the contention that our action in vacating Payne's burglary conviction and sentence requires that he be given a new sentencing hearing for the more serious offenses of armed robbery and armed violence predicated upon burglary where separate sentences have been imposed. We find nothing in the record to indicate that the court took into account the conviction for burglary in determining the length of the sentence for armed violence. See *People v. Bourke* (1983), 96 Ill. 2d 327; *People v. Reyes* (1982), 108 Ill. App. 3d 911, 921; *People v. Buford* (1982), 110 Ill. App. 3d 46, 57 (holding that *Donaldson* requires a remand only when the trial court imposes a single sentence for both offenses).

The final argument raised is that defendant Bailey is

entitled to a new trial or, alternatively, a new sentencing hearing because of the reversal of his armed-violence conviction. Although Bailey did not challenge the sufficiency of the information in the trial court, the appellate court considered the issue and held that, while the caption of the information named both defendants, count 3, charging armed violence, named only Payne and was therefore defective as to Bailey. Apparently the omission was an oversight by the State, and it does not seek review here of the appellate court's ruling. The State does argue, however, that Bailey's failure to object to the armed-violence instruction and verdict forms constitutes a waiver of his argument that he was thereby prejudiced as to the other offenses charged, and that, under the facts in this case, fundamental fairness does not require that he be given a new trial. Defendant cites *People v. Stanko* (1949), 402 Ill. 558, for the proposition that prejudice is the natural result of instructing the jury on uncharged offenses.

In *Stanko*, the court held only that giving an instruction defining a crime not charged is not cured by the presence of an accurate one, because it cannot be shown whether the jury followed the correct or the erroneous instruction. (*Cf. People v. Savaiano* (1976), 66 Ill. 2d 7, 19; *People v. Thompson* (1950), 406 Ill. 323 (overly broad instructions did not result in substantial prejudice).) It is apparent here that all parties believed that both defendants were properly charged with armed violence, armed robbery and burglary. The jury was so instructed and received verdict forms for all offenses. Had Bailey challenged the sufficiency of the information or objected to the proposed instructions and verdict forms on that basis, the trial court could have corrected the error. His failure to do so should preclude a reversal of his other convictions, where, as here, fundamental fairness does not require that he be given a new trial. (See *People v. Huckstead* (1982), 91 Ill. 2d 536; *People v. Tannenbaum* (1980), 82 Ill. 2d 177; *People v. Roberts*

(1979), 75 Ill. 2d 1.) As we have indicated, the issue in this case was one of identification; we are unpersuaded that the jury was prejudicially influenced in its deliberations on this issue by the presence of an additional verdict form for the crime of armed violence or by the instructions.

Finally, considering that the trial judge sentenced Bailey separately for each offense, and the record does not indicate that the court was influenced by the armed-violence conviction in imposing sentences for the other offenses, a remand for resentencing is unnecessary. (See *People v. Owens* (1982), 109 Ill. App. 3d 1150, 1160; *People v. Jones* (1982), 108 Ill. App. 3d 880, 891; *cf. People v. Bourke* (1983), 96 Ill. 2d 327 (where it can be determined from the record that the weight placed on an improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment for resentencing is not required).) The court's comments concerning the need to deter armed home invaders by imposing lengthy sentences were equally relevant, under the facts in this case, to the crimes of armed robbery (also a Class X offense (Ill. Rev. Stat. 1979, ch. 38, par. 18—2)) and burglary.

For the reasons stated, we reverse that portion of the appellate court's judgment affirming Payne's burglary conviction; the balance of the appellate court's judgment is affirmed. The circuit court's judgment as to Payne's conviction for burglary is vacated; the court's judgment as to Bailey's conviction for armed violence is reversed, and the remaining convictions are affirmed.

*Appellate court affirmed in part*
*and reversed in part; circuit*
*court affirmed in part and*
*reversed in part and*
*vacated in part.*