658 So.2d 1123 (1995)
The STATE of Florida, Appellant,
v.
Jose Manuel POLANCO, Appellee.
No. 94-2883.
District Court of Appeal of Florida, Third District.
July 26, 1995.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Soven and Wax and Barry M. Wax and Nancy Wear, Sp. Asst. Public Defenders, for appellee.
Before BARKDULL, COPE and GREEN, JJ.
COPE, Judge.
The State appeals an order granting a motion to suppress the defendant's statements and other physical evidence. We reverse.
Defendant-appellee Jose Manuel Polanco is charged with the second degree murder of Michael Cooper. Defendant was an 18-year-old high school student at the time relevant here. Several days after the murder, a student at defendant's high school told a teacher that defendant had been involved in the killing of Cooper. The student had heard this information from a friend of defendant's girlfriend. The school reported this information to the North Miami Police Department by telephone.
Two North Miami plain-clothes detectives went to the school and asked to speak to the defendant. Defendant was brought from *1124 class to a conference room.[1] The detectives ascertained that defendant had gone to work at a grocery store on the evening of the murder, after which he met a man he identified as Michael and was paid $20 to look at a problem with Michael's car. Defendant identified a photograph of the victim as being Michael.
Upon gathering this information, the detectives concluded that defendant was the last, or one of the last, persons to see the victim alive. One of the detectives testified that he asked the defendant to accompany them to the police station a half block away from the school, for further interview. The gist of the detective's testimony was that this was done on a voluntary basis and that the defendant was not in custody. The defendant's testimony was that the detectives told him they were taking him to the police station and that he was not given a choice in the matter. The defendant and detectives then proceeded to the police station.[2] No Miranda warnings[3] were given at the school or upon arrival at the police station.
At the police station the detectives questioned the defendant further. They obtained a consent to search defendant's car. After questioning defendant for an hour and ten minutes, defendant confessed to the murder. At that point he was arrested and given Miranda warnings. He then gave another statement confessing to the murder. He also told the detectives where he disposed of the murder weapon, which was not recovered, and where he disposed of his own bloody clothing, which was recovered.[4]
Defendant moved to suppress all of his statements, both pre-Miranda and post-Miranda. He also moved to suppress the bloody clothing. The trial court granted the motion to suppress and the State has appealed.[5]
The State first argues that the trial court erred by suppressing the statements made by defendant during the interview at the high school. We agree.
Miranda warnings are required where a person is in custody at the time of the questioning. Caso v. State, 524 So.2d 422, 423 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). "In determining whether a suspect is in custody, `the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" Id. (citations omitted).
Here, the defendant obeyed the school's instructions to leave his class and go to the conference room to meet with the police officers. As this court has held in an analogous case, the fact that the defendant felt obliged to follow the school's instruction does not mean that he is automatically in custody for Miranda purposes. State v. V.C., 600 So.2d 1280, 1281 (Fla. 3d DCA 1992). Here, there were no other circumstances during the school interview which would have reasonably led defendant to conclude *1125 that he was under arrest or restrained to the degree associated with a formal arrest. The detectives told Polanco that they were conducting an investigation and that his name had come up. He was not told that it was a homicide investigation, nor was he told that he was a suspect or under investigation. The interview took place in an empty office on school premises. The inquiry extended solely to the question of defendant's whereabouts on the previous Sunday evening,[6] and whether defendant knew Cooper. At the conclusion of this interview, defendant was asked to come to the police station. There is no testimony of any coercive tactics during the school interview. We see no basis on which to rule that the defendant was in custody for Miranda purposes during the school interview, nor is there a basis on which to conclude that the defendant's statements were involuntary for Fifth Amendment purposes. We reverse that portion of the order which suppresses the defendant's statements made to the detectives at the high school.
The State next asks that there be a new hearing on the question of whether defendant was in custody upon arrival at the police station, or whether alternatively his "in custody" status arose at some subsequent point. In the trial court's suppression order, the trial court found it unnecessary to resolve the conflict in testimony between the detective and the defendant over whether the defendant went voluntarily, or under compulsion, to the police station. Since the trial court had already determined that the defendant was in custody for Miranda purposes while at the school, logically that "in custody" status continued when the defendant accompanied the detectives to the police station.
Consequently we remand for the trial court to revisit the question of whether the defendant was in custody for Miranda purposes upon arrival at the police station and if not, at what subsequent point he must be deemed to have become in custody. See Caso v. State, 524 So.2d 422; Noe v. State, 586 So.2d 371 (Fla. 1st DCA 1991), review denied, 598 So.2d 77, 78 (Fla. 1992). A determination of whether an individual is in custody "requires a consideration of the totality of all the surrounding circumstances." Noe v. State, 586 So.2d at 380 (citations omitted). In so doing, we do not express any view on the merits of the "in custody" issue.
The State next argues that if the defendant was in custody during the pre-Miranda interrogation at the police station (thus requiring the unwarned statements to be suppressed), it does not automatically follow that the post-Miranda statements and evidence must also be suppressed. The trial court suppressed the defendant's pre-Miranda and post-Miranda statements at the police station and also suppressed the bloody clothing found as a result of defendant's statements. Because the suppression order suggests that an incorrect legal standard was followed with regard to suppression of the post-Miranda statements and evidence, we remand for further proceedings on this point.
The United States Supreme Court has distinguished between (a) an unwarned statement and (b) an involuntary statement. Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). An unwarned statement is one which is made without required Miranda warnings. An involuntary statement is a statement that is the product of coercion. 470 U.S. at 304-314.
Assuming that defendant was in custody for Miranda purposes at the police station prior to his confession, it follows that the defendant's unwarned statement must be suppressed. The remaining question, to be ascertained on remand, is whether the unwarned statement was voluntary or involuntary. The wording of the suppression order suggests that the trial court may have assumed that an unwarned statement is automatically an involuntary statement, but that is not so.
The United States Supreme Court has explained that Miranda warnings are a court-imposed prophylactic rule, not a constitutional requirement. Id. Consequently, if a defendant gives an unwarned statement while in custody, there is a violation of Miranda. However, the unwarned statement does not violate the Fifth and Fourteenth Amendments so long as the unwarned statement *1126 is voluntary. Consequently an unwarned, voluntary statement does not trigger the "fruit of the poisonous tree" doctrine. If the defendant is subsequently given proper Miranda warnings and knowingly and voluntarily makes a warned statement, then the warned statement is admissible. Id.
If, however, the defendant's unwarned statement is also involuntary, then the consequences are dramatically different. An involuntary statement is one which is the product of coercion or unfair tactics. An involuntary statement violates the Fifth and Fourteenth Amendments. Consequently, the "fruit of the poisonous tree" doctrine applies where the statement was involuntary. Id.
The Supreme Court has said:
It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.
* * * * * *
Far from establishing a rigid rule, we direct courts to avoid one; there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of Miranda was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of Miranda and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.
Oregon v. Elstad, 470 U.S. at 309, 318, 105 S.Ct. at 1293, 1297-98 (citation & footnote omitted); see also Martin v. Wainwright, 770 F.2d 918, 924-29 (11th Cir.1985), modified, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). This court has elaborated on Oregon v. Elstad in State v. Madruga-Jiminez, 485 So.2d 462, 464-65 (Fla. 3d DCA) (setting forth criteria for evaluating subsequent warned statement), review denied, 492 So.2d 1335 (Fla. 1986).
We remand for the trial court to make a determination whether any unwarned statements were voluntary, or involuntary. Once that determination is made, the principles outlined in Oregon v. Elstad and State v. Madruga-Jiminez should be followed to determine whether the subsequent, warned statements should be suppressed.
The principles outlined in Oregon v. Elstad also apply "when the alleged `fruit' of a noncoercive Miranda violation is ... an article of evidence... ." 470 U.S. at 308, 105 S.Ct. at 1293; see also United States v. Cherry, 794 F.2d 201 (5th Cir.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). Consequently, the same decisional law should be applied in determining whether the articles of bloody clothing must be suppressed.
In summary, we hold that the defendant was not in custody for Miranda purposes during the school interview and reverse the suppression order with respect to those statements. We reverse the balance of the suppression order and remand for further proceedings consistent herewith.
NOTES
[1] When defendant arrived in the conference room, he saw a legal pad with his name and the notation "red Camaro" on it. Since defendant drove a red Camaro, he surmised that somehow he had been reported for driving with a suspended license when he drove to school that day. He deduced that the detectives had asked to see him about that driving violation.

The detectives had written "red Camaro" because the telephone information received from the school included a statement that the defendant was driving a stolen red Camaro. Upon checking the motor vehicle records, the detectives found that the red Camaro belonged to the defendant and was not stolen.
[2] The written suppression order indicates that upon departing from the school, "the defendant asked for and was refused permission to drive his own car." Order at 2. This part of the written order varies from the testimony on this issue. Defendant testified that upon departing from the school in the police car, the detectives asked the defendant to point out his car, and he did so. He asked the officers if they wanted him to bring the car and they said no. As already stated, defendant assumed that the officers knew his driver's license was suspended.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] There is a conflict in the testimony about whether the information about the physical evidence was conveyed before or after the Miranda warnings were given.
[5] Defendant also moved to suppress statements by two independent witnesses. That part of defendant's motion was denied, and those statements are not at issue in this appeal.
[6] The previous Sunday evening was the night of the murder.