844 So.2d 728 (2003)
Justin Lee ROGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3211.
District Court of Appeal of Florida, Fifth District.
May 9, 2003.
*730 James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David H. Foxman and Patrick W. Krechowski, Assistant Attorneys General, Daytona Beach, for Appellee.
TORPY, J.
Appellant was convicted of first-degree murder and sentenced to life in prison. Appellant raises one issue on appeal: whether the trial judge erred in permitting the State to reopen its case in the middle of closing argument for the purpose of introducing a previously suppressed confession. We reverse.
On January 5, 2000, Thomas Rogers, Appellant's uncle, died from five gunshot wounds. Appellant confessed to deputies that he had killed his uncle while robbing him. The confession was obtained during a custodial interrogation. Despite numerous requests by Appellant for a lawyer, sheriff's deputies continued to interrogate him until he confessed by saying, "I just pulled the gun out; I shot, man! I closed my eyes and I shot!" During the remainder of the confession, Appellant described in detail what had occurred and emphasized on numerous occasions that he did not "mean to" kill his uncle. The State and Appellant stipulated that the confession should be suppressed. Based thereon, the trial judge entered an order suppressing the confession.
The State proved its case against Appellant primarily through the testimony of three co-defendants, all acquaintances of Appellant who had accepted negotiated "plea bargains" in exchange for their agreements to provide truthful testimony in the trial of Appellant. All of the co-defendants testified that they went with Appellant to his uncle's house the night of January 5, 2000, and each acknowledged some degree of culpability. Christy Larsen, for example, testified that she drove Appellant and the other co-defendants to the victim's house on the night of the murder, knowing that Appellant had a gun and having reason to believe that Appellant intended to rob the victim. Shortly after Larsen saw Appellant approach the victim's home, she heard the gunshots. Appellant returned to the vehicle and told her to leave quickly, and she drove Appellant from the scene of the murder. Later, Larsen rented a motel room using the victim's money and snorted cocaine which had been purchased using the victim's money. Nick Northfield, another co-defendant, assisted Appellant in attempting to borrow a gun from Larsen's neighbor, Ed Spagenski. He rode in the vehicle to the victim's house on the night of the murder and admittedly assisted in discarding the murder weapon after the murder. Nick Haggermeister admitted to having assisted Appellant in stealing the gun to be used in the robbery from Spagenski, admitted *731 that he knew Appellant's intended purpose for procuring the gun, and assisted Northfield in discarding the murder weapon in a wooded area in Sanford.
All of the co-defendants acknowledged that they initially lied to police concerning their knowledge of the murder. Later, however, they changed their stories and implicated Appellant as the murderer. All three testified that they waited in the car while Appellant shot and robbed the victim, and that Appellant had confessed to them.
The State also presented the testimony of Justin Hall and Kelly Snyder, friends of the co-defendants, who testified that Appellant had admitted to them that he had shot his uncle, and James Greeley, who testified that Appellant had told him around Christmas of 1999 that he intended to rob and kill his uncle. Greeley was an acquaintance of Appellant for some time before the murder.
Ed Spagenski testified that Appellant tried to borrow his gun the day before the murder. Spagenski refused. The next day Spagenski discovered that his apartment had been burglarized, and his gun was missing. Although the murder weapon was not recovered, it was established without dispute that the gun that fired the fatal shots was the same gun that had been stolen from Ed Spagenski.[1]
The defense strategy was to suggest that the co-defendants had falsely implicated Appellant so as to minimize their own liability, and that one of the co-defendants could have been the shooter. During cross-examination of the co-defendants, defense counsel elicited information about the plea bargains made with the State to establish a motivation to lie. Defense counsel further elicited from each co-defendant the fact that they had repeatedly lied to police about their knowledge of the robbery/murder. Finally, each co-defendant was asked, without objection, whether they (the co-defendants) had in fact committed the murder, a fact which each denied.
After the State rested, the defense rested without offering evidence. Defense counsel then delivered his first closing. He argued that the proof was consistent with the co-defendants having robbed and killed the victim and having blamed Appellant to minimize their liability. He pointed out that the gun was taken from Larsen's neighbor, then was wrapped in Northfield's shirt after the murder and hidden in a place suggested by Haggermeister. He further argued that Northfield and Larsen had used the dead man's money to buy drugs and rent a room. These facts, which defense counsel called "hard evidence," were what counsel argued tended to prove that the co-defendants had committed the murder. Conversely, argued defense counsel, no "hard evidence" implicated the defendant. All of these arguments were consistent with the theory of defense presented during opening and during cross-examination of the State's witnesses.
The State never objected to defense counsel's closing argument. Instead, after the first closing was concluded, the State asked the Court to permit it to reopen its case for the purpose of playing Appellant's recorded confession. The State argued that defense counsel's closing argument had opened the door for introduction of the otherwise inadmissible confession. After hearing argument on this issue, although acknowledging that it was "out on a limb," the trial court authorized the State to reopen its case and play the previously suppressed *732 confession. While the confession was being published to the jury, and at the point on the taped confession where Appellant admitted shooting his uncle, Appellant, apparently provoked by the playing of the tape, exclaimed as follows:
Turn it off, man! Turn it off! God damn, man, turn the fucking thing off! I didn't mean to do it, man! I didn't mean to kill my uncle! You-all mother fuckers got what you wanted!
After Appellant's courtroom outburst, the court ordered a recess during which time a Motion for Mistrial was made by Appellant but was denied. Thereafter, the trial resumed. During defense counsel's second closing, he argued that Appellant was guilty of no more than second-degree murder. The jury found Appellant guilty as charged, and the court adjudicated him guilty and sentenced him to life in prison without the possibility of parole.
The State concedes, as it conceded below, that Appellant's confession was obtained in violation of the rights guaranteed to him by the United States Constitution. The State argues, nevertheless, that because defense counsel made argument that he knew to be false in fact, the admission of the confession was necessary to prevent Appellant from misleading the jury by suppressing the truth. We disagree.
Although the search for truth is the goal in all legal controversies, established rules must be followed or the truth might be suppressed. Application of the exclusionary rule, for example, usually results in the suppression of evidence, either physical or testimonial, that might disrupt the truth-seeking objective of a jury trial. On balance, however, the courts have reasoned that the suppression of truth is justified when important constitutional rights are to be vindicated. There are limits, however, beyond which a defendant may not go without losing the shield of the exclusionary rule. For example, in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court recognized that a defendant may not use the shield of the exclusionary rule to permit the defendant to "affirmatively resort to perjurious testimony in reliance on the government's disability to challenge his credibility." Id. at 225, 91 S.Ct. 643. Thus, the Court held that a statement procured in violation of Miranda[2] may nevertheless be used to impeach a testifying defendant in the same manner as any other prior inconsistent statement. The Court reasoned that use of an otherwise voluntary confession, even though obtained wrongfully by police, was justified to avoid a greater wrong, to-wit: perjury.
The State suggests that the Court's reasoning in Harris applies here, and this court should extend Harris to permit the suppressed confession to be used to rebut statements made by an attorney in closing argument. No court has thus far extended Harris in this manner, and we believe to do so is erroneous.
There is a marked contrast between perjured testimony and statements made by an attorney during closing. Perjured testimony is evidence; statements made by an attorney during closing are not. Perjury is a crime and, if not exposed by the tools of the adversary process, might lead to an injustice. Although improper closing argument, left unchecked, might result in an injustice, appropriate rules exist to prevent improper argument or to temper its impact.[3] We do *733 not believe, therefore, that the use of a confession procured in violation of the Constitution is justified to rebut a misleading closing argument under the reasoning of Harris.[4]
Even assuming that use of an impermissibly obtained confession is justified to rebut improper argument by counsel, the facts of this case do not justify use of the confession because the argument of counsel here was not improper. It was the State's burden to prove beyond a reasonable doubt that Appellant was guilty. It was not Appellant's burden to prove his innocence. A reasonable doubt might occur when evidence is lacking or when it is discredited. Therefore, a defense lawyer's duty during closing is to challenge the sufficiency and credibility of the State's proof. Counsel is free to argue these issues using all reasonable inferences that might be drawn from the evidence. That is all that was done here. We conclude, therefore, that the court erred in admitting the confession.
Having determined that the admission of the confession was error, we turn our attention to the issue of whether the error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Our function in performing this analysis is to consider how the error might have affected the jury. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). This requires that we evaluate the strength of the evidence that was properly before the jury to determine if the error impacted the jury's decision. Fulminante, 499 U.S. at 310, 111 S.Ct. 1246. The parties dispute which evidence was properly before the jury for purposes of our inquiry. The State urges that Appellant's in-court outburst was properly before the jury. Because the outburst was equally as prejudicial as the recorded confession, the State argues that any error in admitting the recorded confession was harmless. Conversely, Appellant argues that the outburst should not be considered because it constitutes so-called "fruit of the poisonous tree," citing Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). The difficulty we have in accepting either position is that, due to the unusual circumstances, the trial judge never had the opportunity to make findings of fact that are necessary for us to determine whether the outburst would constitute admissible evidence.
In Harrison, the defendant was tried for felony murder. During his trial, the court admitted three confessions made by the defendant. Although the defendant had previously determined not to testify, upon the court's decision to admit the confessions, the defendant elected to testify in an effort to contradict the confessions. Id. at 220, 88 S.Ct. 2008. The defendant was convicted, appealed and his conviction was reversed because the confessions had been illegally obtained. Id. Upon retrial, the court permitted the State to read into evidence the defendant's testimony from the first trial. Id. at 221, 88 S.Ct. 2008. Again convicted, the defendant challenged *734 on appeal the admissibility of his former testimony at his retrial. The Court held that the testimony was not admissible because it was the tainted "fruit of the poisonous tree," relying upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Seventeen years after Harrison, the Court revisited the issue of whether the "fruits" doctrine applies to Fifth Amendment violations. In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court held that the "fruit of the poisonous tree doctrine" has no application to "noncoercive Miranda violations." Id. at 308, 105 S.Ct. 1285. When a tainted, noncoerced confession precedes a confession that otherwise comports with Miranda's dictates, the subsequent confession is not rendered inadmissible merely because it might be the product of the tainted confession. Id. at 318, 105 S.Ct. 1285. Rather, the relevant inquiry, said the Court, is whether the subsequent confession was voluntarily made. Id. Although the premise upon which Harrison was predicated was rejected in Elstad, the Court did not expressly overrule its holding. Rather, the Court restated the Harrison holding as follows:
If the prosecution has actually violated the defendant's Fifth Amendment rights by introducing an inadmissible confession at trial, compelling the defendant to testify in rebuttal [the testimony may not be used on retrial].
Id. at 316, 105 S.Ct. 1285. (emphasis supplied). This language makes clear that the holding in Harrison has limited application to the unique circumstances wherein a defendant is forced to waive his privilege to rebut a confession that is improperly admitted. Elstad also makes clear that the broad rule of exclusion known as the "fruits" doctrine has no application to cases involving mere technical Miranda violations.[5]
Here, Appellant's outburst, although perhaps triggered by the court's erroneous ruling, was not compelled by the need to rebut the confession. Rather, it was the apparent product of Appellant's lack of self control. Moreover, the outburst did not rebut the confession; the outburst echoed the confession's exact substance. Harrison is therefore distinguished. Because the parties stipulated that the recorded confession would not be used, however, the record is unclear as to whether the recorded confession was suppressed exclusively because of a technical violation of Miranda or because it was also the product of actual coercion. Furthermore, because the outburst came without warning, the trial court was unable to make a finding of fact concerning whether the outburst was a voluntary act. On this record, therefore, we are unable to determine whether the outburst was properly before the jury under Elstad for purposes of our harmless error analysis.
We are left, therefore, with the task of considering the impact of the recorded confession on the jury in light of the other evidence properly admitted. Although the State's case was strong, we cannot say beyond a reasonable doubt that the confession did not contribute to the verdict. The admission of the confession in the middle of defense counsel's closing argument so completely undermined his entire trial strategy that all counsel could do was to urge the jury to find Appellant guilty of a lesser murder charge. Under these peculiar *735 circumstances, we are constrained to require a new trial. Therefore, the judgment and sentence are reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED.
GRIFFIN, J., concurring and concurring specially.
SAWAYA, J., concurring in part; dissenting in part.
GRIFFIN, J., concurring and concurring specially.
I agree that the appellant should have a new trial. The record strongly suggests, however, that the initial confession was elicited in violation of Rogers' right to counsel, not coerced. Also, the record strongly suggests that there was nothing "involuntary" about Rogers' outburst. Therefore, on retrial, the statement may be admissible and the verdict may be the same.
Our opinion should not be read to give criminal defendants faced with an erroneous ruling admitting adverse evidence a free shot to communicate directly with the jury in hopes they will side with him. If it were not for the fact that the error presented here rose to a level implicating due process, this would be a harmless error case precisely because of the outburst.
SAWAYA, J., concurring in part, dissenting in part.
I agree that the decision in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), should not be extended to instances where an illegally obtained confession is admitted to rebut defense counsel's closing argument and that it was error to admit the defendant's previously suppressed confession into evidence.[6] I also agree that defense counsel's closing argument was appropriate comment on the evidence introduced by the State. Finally, I agree that the conviction must be reversed and this case remanded for a new trial. However, I respectfully disagree with the majority that the harmless error analysis applies in this case. In my view, the error in admitting the defendant's confession is per se reversible error.
Prior to trial, the State stipulated that the confession the police extracted from the defendant, who was eighteen years old at the time, was illegally obtained and that the defendant's motion to suppress should be granted.[7] Based on that stipulation, *736 the trial court suppressed the defendant's confession and all of his subsequent statements to the police. In reliance on the State's stipulation and the trial court's order of suppression, the defendant presented his opening statement to the jury wherein he submitted his theory of defense without objection from the State. The theory of defense was that the State's evidence would show that one of the co-defendants committed the murder. The defendant advanced that theory throughout the course of the trial without objection from the State. The defendant did not testify and did not present any evidence; thus, the defendant's attorney was entitled to present his closing statement first with rebuttal to follow the State's closing statement. The defendant's attorney argued the same theory of defense throughout his initial closing statement without objection from the State.
After defense counsel completed his initial closing statement, the State made its motion to reopen its case to present to the jury the previously suppressed confession. The basis of the motion was the State's contention that defense counsel's argument, which had been advanced through the entire course of the trial without objection, inappropriately argued to the jury that the State's evidence pointed to individuals other than the defendant as having committed the murder.
The trial court granted the motion without conducting a hearing on the defendant's motion to suppress. The jurors were brought back into the courtroom and the confession was presented to them. During this presentation, the jury was subjected to the specter of the defendant's emotional outburst as he heard his confession, which he knew had previously been suppressed, actually being presented to the jury. The courtroom was cleared and a recess was taken. The jurors were subsequently returned to the courtroom to have the conclusion of the confession presented to them. Thereafter, the defendant's attorney notified the court that he had no alternative but to abandon his defense that the defendant was not guilty and, instead, argue to the jury that defendant was guilty of a lesser included offense. The State then presented its closing argument to the jury.
Stripped of his defense and with his credibility with the jury completely destroyed, the demoralized defense attorney presented his rebuttal closing argument. He told the jury that "Justin Rogers is guilty of Manslaughter. He's not guilty of First Degree Murder." The attorney concluded with this simple request: "Please do the right thing and find him guilty of the charge that he actually committed." Despite having no legal basis to admit the confession, the majority nevertheless concludes that the trial court's erroneous decision to do so is subject to harmless error analysis. I disagree. In my view, the error constitutes reversible error per se.
The per se reversible error rule exists to ensure that an accused's rights to due process are not violated and to ensure that errors that are so fraught with prejudice to the accused's right to a fair trial are corrected. See State v. Franklin, 618 So.2d 171 (Fla. 1993).
There are many examples of per se reversible error that are not subject to harmless error analysis: failing to conduct a Faretta inquiry;[8] responding to a request from the jury without the state, the *737 defendant, and the defendant's attorney being present;[9] providing jurors with a copy of the written instructions without notifying either counsel;[10] a bailiff responding to jurors' request to hear a replay of evidence by telling them to rely on their own memories, even though the trial judge stated on the record that that was the response he would have given the jury anyway;[11] the trial court initiating plea negotiations with the defendant;[12] denying the Sixth Amendment right to counsel; [13] erroneously denying a peremptory or cause challenge;[14] allowing an alternate juror to replace an incapacitated juror, regardless of the cause, once jury deliberations have begun;[15] omitting a necessarily lesser included offense from the verdict form, precluding the jury from exercising its pardon power;[16] repeating the Allen instruction and sending a jury back for further deliberations after it has announced a second deadlock;[17] submitting some, but not all, of the standard jury instructions to the jury in writing;[18] orally pronouncing departure reasons at sentencing, but not reducing them to writing until several days later;[19] and failing to provide a defendant a hearing on his or her motion to suppress.[20]
*738 If these are examples of errors that require application of the per se reversible error rule, then conducting a trial by ambush in the manner done here must surely rise to the top of the list. The significance of the error committed by the trial court in admitting the confession is that it completely obliterated any semblance of a fair trial for the defendant. The defendant and his counsel lost all credibility with the jury, they lost their viable defense, and the jury was left with no choice but to convict the defendant. I believe that if ever a case warranted application of the per se reversible error rule, this is it.
In my view, no court should indulge the type of error committed in this case as being potentially harmless, depending on the court's view of the strength of the evidence presented by the party who actually caused the error to occur. I believe that this sends a wrong messagethat this sort of trial tactic may be excused by courts based on the harmless error doctrine. To do so, I fear, may encourage those who are inclined to engage in such practices to take improper evidentiary risks. Rather, I believe that the emphasis should be on preserving the integrity of all of the constitutional protections that guarantee every person a fair trial rather than on analyzing the strength of the evidence presented in a particular case by a litigant who may believe otherwise. We, the judiciary, must never "permit the noble art of trial practice to degenerate into a free-for-all" [21] and we must be steadfast in our unwillingness "to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing."[22]
The majority expends much time and effort discussing the admissibility of the outburst Rogers made as he heard his confession being played to the jury. This discussion seems to culminate in the predictions made by Judge Griffin in her concurring opinion that the outburst "may be admitted in the retrial and the outcome may be the same." Although I believe the expression of these predictions is wrong for several reasons, I will mention only one. The issue whether the statement the defendant made is admissible in the retrial is not an issue that the parties raised in these proceedings and therefore is not an issue that either the State or the defendant has been given an opportunity to address. This court has emphatically held that "[w]e do not address issues not clearly set out in the issues on appeal." Florida Emergency Physicians-Kang & Assocs., M.D., P.A. v. Parker, 800 So.2d 631, 636 (Fla. 5th DCA 2001) (citing F.M.W. Prop., Inc. v. Peoples First Fin. Sav. & Loan Ass'n, 606 So.2d 372, 376 (Fla. 1st DCA 1992) (stating that the "failure to organize arguments under cogent and distinct issues on appeal presents sufficient reason for an appellate court to decline consideration of a matter.")). Hence, the parties will become acquainted with this issue and *739 the reasoning supporting Judge Griffin's predictions for the first time when the concurring opinion is received and read by them.
I must make one final response to Judge Griffin's opinion. She states that defendants should learn from this case that they should not attempt to curry favor or sympathy from the jury as the defendant did when he made his now infamous outburst. Quite frankly, I do not believe that the defendant's statement that "you mother fuckers got what you want" after he admitted shooting his uncle was an attempt on his part to curry favor or sympathy from the jury. Apparently the jury was of the same view because it rendered an unsympathetic verdict finding him guilty as charged of first-degree murder.
NOTES
[1] Bullets recovered from an area where Spagenski had conducted target practice with the revolver were matched ballistically to the projectiles recovered from the body of the victim.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Standard jury instructions caution juries that closing arguments do not constitute evidence. Ethics rules prohibit lawyers from making improper arguments, and trial judges have the power to prevent improper argument by granting timely objections.
[4] This is a different case than that presented in People v. Payne, 98 Ill.2d 45, 74 Ill.Dec. 542, 456 N.E.2d 44 (1983). When a lawyer questions a witness, the answer is evidence. If a lawyer's questions falsely suggest a lack of evidence that the lawyer knows exists but which was subject to pretrial suppression, the door might well be opened for introduction of the evidence. See also McCrae v. State, 395 So.2d 1145, 1151 (Fla.1980) (misleading cross examination might open door.)
[5] Furthermore, the "fruits" doctrine does not apply, ipso facto, to exclude confessions obtained subsequent to a coerced confession if the subsequent confession is sufficiently attenuated so as to remove the taint of the coerced confession. Elstad, 470 U.S. at 310, 105 S.Ct. 1285.
[6] If a party, in closing argument, mischaracterizes the evidence or argues facts not in evidence, the opposing party may object and request the trial court to put a stop to it. Moving to reopen the state's case for the purpose of introducing a defendant's previously suppressed confession after defense counsel presents his closing argument, however, is certainly not a mechanism or procedure recognized or approved by any court of this state to address the issue of inappropriate closing argument.
[7] The defendant in his motion to suppress requested, and the State stipulated, that the confession and all subsequent statements be suppressed. The State contends, and Judge Griffin apparently agrees in her concurring opinion, that the confession was suppressed only because it was obtained in violation of the defendant's Miranda rights; the defendant contends that it was also suppressed because it was coerced and involuntarily given. Clear distinctions have been drawn between confessions that are given without appropriate Miranda warnings and coerced confessions that are not voluntarily given. The courts agree that statements given by a defendant subsequent to an illegally obtained confession are suppressed only if the confession was involuntarily given. See Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); Perez v. State, 781 So.2d 1178 (Fla. 3d DCA), review denied, 796 So.2d 537 (Fla.2001); State v. Nash, 718 So.2d 269 (Fla. 5th DCA 1998); State v. Polanco, 658 So.2d 1123 (Fla. 3d DCA 1995); see also Haynes v. State, 729 So.2d 498 (Fla. 1st DCA 1999). Therefore, it appears that the motion and order of suppression, although not explicitly stating so, were based on both Miranda violations and involuntariness.
[8] Clary v. State, 818 So.2d 686 (Fla. 5th DCA 2002).
[9] Williams v. State, 488 So.2d 62 (Fla.1986); Ivory v. State, 351 So.2d 26 (Fla.1977); Stephens v. State, 779 So.2d 580 (Fla. 5th DCA), review denied, 796 So.2d 538 (Fla.2001); McGlynn v. State, 697 So.2d 571 (Fla. 4th DCA 1997).
[10] State v. Franklin, 618 So.2d 171 (Fla. 1993).
[11] State v. Merricks, 831 So.2d 156 (Fla.2002).
[12] State v. Chaves-Mendez, 809 So.2d 910 (Fla. 5th DCA 2002).
[13] Wofford v. State, 819 So.2d 891 (Fla. 1st DCA 2002).
[14] Gilliam v. State, 514 So.2d 1098, 1099 (Fla. 1987); Austing v. State, 804 So.2d 603 (Fla. 5th DCA 2002); Arnold v. State, 755 So.2d 696 (Fla. 4th DCA 1999).
[15] Williams v. State, 792 So.2d 1207 (Fla. 2001).
[16] Macri v. State, 689 So.2d 1280 (Fla. 5th DCA 1997) (citing State v. Wimberly, 498 So.2d 929 (Fla.1986); Nelson v. State, 665 So.2d 382 (Fla. 4th DCA 1996); Crapps v. State, 566 So.2d 62 (Fla. 5th DCA 1990)); Prater v. State, 608 So.2d 559 (Fla. 2d DCA 1992).
[17] Washington v. State, 758 So.2d 1148 (Fla. 4th DCA), review denied, 786 So.2d 1192 (Fla. 2000); Tomlinson v. State, 584 So.2d 43, 45 (Fla. 4th DCA), review denied, 592 So.2d 682 (Fla. 1991).
[18] Wilson v. State, 746 So.2d 1209 (Fla. 5th DCA 1999); Bowe v. State, 600 So.2d 26 (Fla. 4th DCA 1992).
[19] Pease v. State, 712 So.2d 374 (Fla. 1997); State v. Colbert, 660 So.2d 701 (Fla. 1995).
[20] See Chapman v. State, 446 So.2d 1186 (Fla. 4th DCA 1984); Ferrazzoli v. State, 442 So.2d 1056 (Fla. 1st DCA 1983); Barker v. State, 438 So.2d 1014 (Fla. 4th DCA 1983); see also Ross v. State, 779 So.2d 300 (Fla. 2d DCA 1999); Martin v. State, 654 So.2d 978 (Fla. 1st DCA 1995); Godson v. State, 600 So.2d 1287 (Fla. 4th DCA 1992); Williams v. State, 548 So.2d 898 (Fla. 4th DCA 1989). In the instant case, based on the State's pretrial stipulation, the trial judge, without an evidentiary hearing, entered the order suppressing the confession and all subsequent statements of the defendant. When the State moved to reopen its case, the trial judge, who was not the judge that entered the suppression order, simply reviewed the transcript of the confession to determine whether the statements made by the defendant conflicted with defense counsel's closing argument. Concluding that they did, the judge ruled that the confession would be admitted. Hence, the defendant in the instant case has never been afforded an evidentiary hearing and the trial court has never considered the totality of the circumstances surrounding the confession. Furthermore, despite the revelation of defense counsel that the motion to suppress was based on Miranda violations and the involuntariness of the confession, the trial court made no findings whatsoever regarding the voluntariness of the confession and there is nothing in the record to support the conclusion that the trial judge found the confession to be voluntary by a preponderance of the evidence. Not only did the State fail to meet its burden of proving by a preponderance of the evidence that the confession was voluntary, it made no showing at all. It simply argued, and erroneously so, that the confession should be admitted because of the allegedly false statements made in the defendant's closing argument that the evidence presented by the State pointed to individuals other than the defendant who could have committed the murder.
[21] Nelson v. Reliance Ins. Co., 368 So.2d 361, 361 (Fla. 4th DCA 1978).
[22] Borden, Inc. v. Young, 479 So.2d 850, 851 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla. 1986).