781 So.2d 1178 (2001)
Guido PEREZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-1871.
District Court of Appeal of Florida, Third District.
April 11, 2001.
*1179 Bennett H. Brummer, Public Defender, and Frank P. Triola, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Margaret A. Brenan, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO, and RAMIREZ, JJ.

ON REHEARING EN BANC
RAMIREZ, J.
Guido Perez appeals his convictions and sentences for sexual battery on a victim under the age of twelve and for lewd and lascivious assault. Perez contests the admissibility of statements which he made after he was read his Miranda[1] warnings because the police had elicited incriminating admissions before the warnings were given. We hold that the post-Miranda statements are admissible because Perez's pre-Miranda statements were not a product of police coercion or improper tactics, and his post-Miranda statements were otherwise voluntary. Thus, we recede from State v. Madruga-Jiminez, 485 So.2d 462 (Fla. 3d DCA), rev. denied, 492 So.2d 1335 (Fla.1986).
After Perez became a suspect in sexual battery allegations, Detectives Elizabeth M. Alvarez and Tony Rodriguez went to his residence to question him. Detective Alvarez admitted that she already had probable cause to arrest Perez, who was the only suspect. The detectives explained to Perez that they needed to speak to him in reference to an investigation and he complied by going with them to the police station. At the station, Perez was placed in an interview room. The detectives began their interview shortly after 5 p.m. Without first reading Perez the Miranda *1180 warnings, Detective Alvarez began to take down personal information. She asked Perez if he knew why he had been brought to the station and he said that he did not know. She asked him if he knew the alleged victim and he said that he knew the victim from the neighborhood. Perez also said that he knew some people thought he had abused the victim, but that he did not touch her. Detective Alvarez then told him to stop talking and read him the Miranda warnings at 5:28 p.m. After the warnings, Perez continued to talk, and ultimately confessed to most of the allegations against him. He also gave a recorded confession.
Perez filed a motion to suppress all his statements and his confession, contending that the initial, unwarned statement made about "abuse" tainted the statements made after the Miranda warnings. The trial court suppressed the pre-Miranda statements, but admitted the post-Miranda statements. At trial, Detective Alvarez testified to what Perez had said to her and Perez's recorded statement was admitted into evidence. The jury also heard hearsay testimony from several adult witnesses who recounted what the victim had told them had happened to her at Perez's residence. The jury convicted Perez on two counts of sexual battery and two counts of lewd and lascivious behavior. He was sentenced to life in prison on the sexual battery counts and to ten years on each of the lewd and lascivious behavior counts to run concurrently.
Perez argues that the pre-Miranda statements regarding abuse tainted his post-Miranda statements, and thus the post-Miranda statements should have been suppressed unless they were sufficiently attenuated to remove the taint of the initial misconduct. Perez relies on Madruga-Jiminez, supra. In that case, the suspect was questioned at the police station about background information without first being advised of his Miranda rights. Madruga-Jiminez, 485 So.2d at 463. There was an outstanding arrest warrant for Madruga-Jiminez of which he was not informed. The interviewing officer testified that the pre-Miranda questioning "was to set [Madruga-Jiminez] at ease and gain his confidence." Id. During the interview, the interviewing officer confirmed that Madruga-Jiminez had arrived in the United States with another individual who was a suspect in the murder, and that Madruga-Jiminez worked for the victim. Id. at 463-64, 86 S.Ct. 1602. When Madruga-Jiminez's employment with the victim came up, Madruga-Jiminez asked the interviewing officer "[t]hat's what you want to talk to me about, isn't it?", to which the interviewing officer responded, "[w]e'll get back to that." Id. at 464, 86 S.Ct. 1602. Madruga-Jiminez was finally given Miranda warnings after one and one half hours of questioning.
This Court found that the pre-Miranda statements given by Madruga-Jiminez were involuntary and thus his post-Miranda statements, as well as his pre-Miranda statements, warranted suppression. Id. at 464-66, 86 S.Ct. 1602. Relying on Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), we adopted a presumption of compulsion and a "taint analysis" as a rule which would "serve[] the goals of obtaining trustworthy statements and deterring police misconduct." Madruga-Jiminez, 485 So.2d at 465-66. However, we must recede from such a presumption based upon our examination of Elstad.
In Elstad, the police went to Elstad's home with a warrant for his arrest for a burglary. His mother led the police to Elstad's bedroom. The officers asked him to get dressed and accompany them into the living room, where they questioned *1181 him about the burglary without advising him of his Miranda rights. Elstad admitted that he had heard of a burglary at the victims' house and that he "was there." Elstad, 470 U.S. at 301, 105 S.Ct. 1285. He was then transported to the police station where, approximately one hour later, the officers read him his Miranda rights. Elstad then made a statement in which he detailed his involvement in the burglary. Id. Elstad moved to suppress the oral statements he had given at his home and the subsequent signed confession, and argued that the pre-Miranda statements tainted his post-Miranda confession. Id. at 302, 105 S.Ct. 1285. The Supreme Court found that the defendant's pre-Miranda statements were properly barred, and the post-Miranda statements were voluntarily made. Id. at 318, 105 S.Ct. 1285.
In Elstad, the Supreme Court stated:
"It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." Id. at 309 [, 105 S.Ct. 1285]. (Emphasis added). Furthermore, "[t]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of Miranda, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements."
Id. at 318, 105 S.Ct. 1285.
Madruga-Jiminez correctly drew a distinction between an involuntary statement and a statement obtained in technical violation of Miranda. The distinction is important because it is only when the suspect gives an involuntary statement that the state is required to show that the taint of the initial coercion is sufficiently attenuated. With technical violations of Miranda, a subsequent administration of the warnings "ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." Elstad, 470 U.S. at 313, 105 S.Ct. 1285.
Elstad differentiates the two types of statements on the basis of coercion:
There is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a "guilty secret" freely given in response to an unwarned but noncoercive question.
Id. at 312, 105 S.Ct. 1285. Thus, we recede from Madruga-Jiminez because it adopted a presumption of compulsion.
In the present case, there was no coercive police conduct. Although Perez was in custody, he was not subjected to any "physical violence or other deliberate means calculated to break the suspect's will." Elstad, 470 U.S. at 312, 105 S.Ct. 1285.
Based on the Elstad standard, we conclude that the trial court acted properly in suppressing the pre-Miranda statements and admitting the post-Miranda statements. *1182 Perez confessed after he knowingly waived his Miranda rights. The interviewing detective testified that as soon as Perez mentioned that he had been accused of abuse, the detective asked Perez to stop talking and read him his Miranda rights. Perez thereafter spoke freely in response to noncoercive questioning. Thus, Perez's post-Miranda statements are admissible. While the better police procedure may be to read a suspect the Miranda warnings before any custodial interrogation, we affirm the trial court's rulings because Perez was not subjected to improper police tactics before being given the Miranda warnings, and he then voluntarily waived his rights.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).