915 So.2d 1228 (2005)
Larry HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-1073.
District Court of Appeal of Florida, Second District.
December 16, 2005.
SILBERMAN, Judge.
Larry Hamilton appeals the denial of his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Following a jury trial, Hamilton was convicted of second-degree murder and grand theft of a motor vehicle. In his postconviction motion, he raised several claims of ineffective assistance of counsel. The postconviction court summarily denied relief as to all claims. We reverse and remand for an evidentiary hearing on Hamilton's second claim, that trial counsel's failure to move to suppress his videotaped statement to law enforcement constitutes ineffective assistance. We affirm the denial of Hamilton's other claims without comment.
*1229 The limited record that is before us reflects that Hamilton has an IQ between 62 and 74. He has a history of cranial cerebral trauma and has a moderate degree of impairment in brain function. Test results indicate "major mental illness characterized by psychotic thought disorder and major depression," drug and alcohol dependence, clinical levels of anxiety, "schizotypal disorder," and scores varying "between mild mental retardation or mental deficiency to extremely low average." The record reflects that law enforcement interrogated Hamilton for some time before Miranda[1] warnings were administered to him; that he made potentially incriminating statements prior to receiving the Miranda warnings; and that after receiving the warnings, he admitted to stabbing the victim and made additional incriminating statements. Although our record does not include the entire trial transcript, it appears that Hamilton's defenses at trial included insanity and self-defense.
In his postconviction motion, Hamilton alleged that law enforcement interrogated him about the crimes before giving the Miranda warnings; that after the initial interrogation, law enforcement commenced videotaping the interrogation, still without giving the Miranda warnings; that during the videotaping, after he made inculpatory statements, law enforcement read the Miranda warnings to him; that the videotape reflects that when asked if he understood the Miranda warnings, he responded by shaking his head; that when the officer said that he had to answer and could not just shake his head, his response was unintelligible and did not reflect a valid, intelligent, and voluntary waiver of his rights; that neither the statements that he made before he was given the Miranda warnings nor those made after the warnings were admissible into evidence; that the State introduced the videotape into evidence, played it at trial, and used his statements during closing arguments to establish that he was sane at the time of the crimes; that expert witnesses heavily relied on the videotape to testify that he was not insane at the time of the crimes; and that trial counsel's failure to object to the videotape or to move to suppress the videotape and his statements constituted ineffective assistance of counsel. Hamilton contended that if counsel had properly raised the issue, the videotape and inculpatory statements would have been excluded, resulting in his conviction being "unconstitutional and requiring a new trial."
The postconviction court denied the claim, relying on portions of the trial transcript. The postconviction court first found that the claim was facially insufficient because Hamilton voluntarily went with the police. The court added that even if Hamilton was in custody, he "can point to no coercive police conduct or physical violence prior to the administration of his rights." Further, the court stated that Hamilton did not "claim that his post-Miranda statements were not knowingly and voluntarily made."
We cannot agree with the postconviction court's analysis. The transcript excerpts that the court relied upon do not reflect that Hamilton voluntarily went with or spoke with law enforcement, that he was not in custody, or that his freedom had not been significantly restrained. See Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (reiterating that Miranda warnings must be administered after a person is taken into custody or when the person's freedom has been significantly restrained) (citing Miranda, 384 U.S. at *1230 478, 86 S.Ct. 1602). At a minimum, the record reflects that Hamilton has a legitimate argument that the interrogation, from its inception, was custodial in nature and that he should have been given the Miranda warnings at the commencement of the interrogations. See Mansfield v. State, 758 So.2d 636, 644 (Fla.2000); Ramirez v. State, 739 So.2d 568, 573-74 (Fla.1999).
The postconviction court's comment that Hamilton did not claim that the post-Miranda statements were not knowingly and voluntarily made is simply incorrect in light of the allegations contained in Hamilton's motion. Although the postconviction court cited to Perez v. State, 781 So.2d 1178 (Fla. 3d DCA 2001), in support of the denial of Hamilton's claim, there the court noted that Perez had "knowingly waived his Miranda rights." Id. at 1182. Here, the record does not refute Hamilton's allegation that he did not knowingly and voluntarily waive his rights. Indeed, when he was given the Miranda warnings and asked whether he understood his rights, Hamilton's answer appears to have been nonresponsive to the question. The transcript also reflects that portions of his answer were unintelligible.
The postconviction court next stated that even if Hamilton's claim was facially sufficient, the "totality of circumstances as evidenced by the videotape reflect" that Hamilton had not been threatened or coerced to speak with law enforcement, that he had not claimed threats or coercion, and that he voluntarily waived his Miranda rights. Although the postconviction court is correct that Hamilton did not specifically claim that he had been threatened or coerced, the record does not refute his claim that he had not knowingly or voluntarily waived his rights, and the record does not establish that Hamilton was voluntarily speaking with the police. Instead, the record appears to reflect that Hamilton was in custody when he was interrogated, that the interrogation proceeded for a substantial period of time, and that Hamilton did not respond to the question of whether he waived his rights in a manner that suggested any knowing, voluntary waiver. In light of the record evidence as to Hamilton's mental capabilities, it is unclear whether Hamilton had the mental capacity to understand and knowingly waive his rights. Cf. Johnston v. Dugger, 583 So.2d 657, 661 (Fla.1991) (concluding that substantial evidence presented at an evidentiary hearing supported the trial court's rejection of Johnston's claim that his mental condition precluded a valid waiver of Miranda rights and that his counsel was ineffective by not seeking to suppress statements on that basis).
The postconviction court also rejected Hamilton's "claim of prejudice based on his allegation that the examining doctors relied `heavily' on the videotape in forming their opinions of his sanity at the time of the crime." The court observed that the videotape was only one item that the doctors relied upon to form their opinions and noted that the doctors interviewed Hamilton, administered psychological tests, and reviewed his past medical records. The court also stated that the videotape proved useful to Hamilton "to illustrate behavior arguably consistent with delusions and the insanity defense."
Although the postconviction court correctly noted that the doctors considered significant additional information as part of their evaluations, the record does not reveal the weight the doctors gave to the information obtained from the videotaped interrogation and whether the videotape impacted their evaluations in any meaningful way. Thus, we cannot conclude that the portions of the experts' testimony contained in our record refute this aspect of *1231 Hamilton's claim. Moreover, while the postconviction court found that Hamilton used the videotape to support his defense, the record is unclear as to what evidence, apart from Hamilton's statements, was used to prosecute him. The record also does not reveal whether the defense strategy would have been different or more successful had trial counsel pursued and obtained suppression of the tape.
Finally, the postconviction court stated that "[b]ased on the trial record, including the defense strategy/theories, this Court does not find counsel deficient for failing to move to suppress the videotaped statement of the Defendant" and that Hamilton's "claim fails to support a finding that he was prejudiced by the admission of the videotape." In evaluating ineffective assistance of counsel claims, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "[to] conclude that an action or inaction taken by a trial attorney was a strategic decision generally requires an evidentiary hearing." Sampson v. State, 751 So.2d 602, 602 (Fla. 2d DCA 1998); see also Guisasola v. State, 667 So.2d 248, 249 (Fla. 1st DCA 1995).
Here, there is little to suggest that defense counsel elected not to file a motion to suppress for any strategic purpose. Had counsel employed such a strategy, the strategy may well have constituted deficient performance. However, it appears that under the circumstances of this case, the issue cannot be resolved without an evidentiary hearing. See Barychko v. State, 837 So.2d 491, 492 (Fla. 4th DCA 2003) (reversing the summary denial of an ineffective assistance of counsel claim and concluding that while the record suggests trial counsel may have delayed filing a motion to suppress for strategic reasons, it appeared such a strategy constituted deficient performance); see also Maharaj v. State, 778 So.2d 944, 959 (Fla.2000) (determining that defense counsel's testimony at the evidentiary hearing supported the trial court's ruling that counsel's decision not to file a motion to suppress was a strategic decision).
Therefore, we reverse the summary denial of Hamilton's claim that trial counsel was ineffective for failing to file a motion to suppress and remand for an evidentiary hearing on that claim. We affirm the denial of the other claims asserted in Hamilton's postconviction motion.
Affirmed in part, reversed in part, and remanded.
WHATLEY and NORTHCUTT, JJ., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).